UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FLORENCE HARVEY ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-9510 c/w 06-9512 c/w 07-1465 c/w 07-9190** |
| **MOSAIC FERTILIZER, L.L.C.** | **SECTION: "S" (5)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Gulf Forge's motion to dismiss Mosaic Fertilizer, L.L.C.'s third-party claims (document #42) and the various plaintiffs' claims (document #84) for lack of *in personam* jurisdiction are **DENIED**.

**IT IS FURTHER ORDERED** that Forge USA's motion to dismiss Mosaic Fertilizer's L.L.C.'s third-party claims (document #42) and the various plaintiffs' claims (document #84) for failure to state a claim upon which relief may be granted, which the court treats as one for summary judgment, are **GRANTED**; and the third-party claims and plaintiffs' claims against Forge USA are **DISMISSED**. (Document #42.)

### I. BACKGROUND

Florence Harvey, Ulysses Gauthreaux, and Lionel and Ernestine Albert filed a "Class Action Petition for Damages" in the 23rd Judicial District Court for the Parish of St. James, State

of Louisiana, against Mosaic Fertilizer, L.L.C. a/k/a Mosaic Faustina Fertilizer Plant (Mosaic or Faustina), YUBA Heat Transfer, L.L.C. (YUBA), Gulf Forge Company (Gulf Forge), and Forge USA on behalf of themselves and others similarly situated in sustaining damage as a result of an explosion and release of hazardous substances from the Mosaic facility in St. James Parish.

On October 11, 2006, workers at the Faustina facility were processing product when hydrogen gas leaked and ignited.  A heat exchanger identified as the "123-C Exchanger" separated at the weld seam of the inlet tube sheet, causing separation of the inlet tube sheet and the "123-C Exchanger" cap during normal operation.  The separation resulted in a fire which burned the gases contained in the process equipment.

The "123-C Exchanger" was purchased from YUBA, the manufacturer, and the inlet tube sheet was forged and provided to YUBA by Gulf Forge.  Forge USA now conducts forging operations at the same location where Gulf Forge once operated.

The plaintiffs allege a claim of negligence for the acts of others, pursuant to La. Civil Code art. 2317.  The case was consolidated with similar actions filed in No. 06-9512, No. 07-0145, and 07-9190.  Additional defendants Donald Brooks and Joseph Delatte were named in No. 06-9512.  Mosaic filed a third-party demand against Gulf Forge, Forge USA, and YUBA, seeking indemnity, damages to the plant, and lost revenue as a result of an inoperable plant.

Mosaic, a Delaware corporation with its principal place of business in Florida,  removed the case to federal court, asserting diversity jurisdiction.  The plaintiffs filed a motion to remand the case to state court, and the court denied the motion.  Gulf Forge and Forge USA filed motions to dismiss the plaintiffs' claims and Mosaic's third-party claims for failure to state a

claim against Forge USA and lack of *in personam* jurisdiction over Gulf Forge and Forge USA.

## II. DISCUSSION

### A. Claims against Forge USA

#### 1. Legal standard

The court treats the motion to dismiss for failure to state a claim as one for summary judgment because materials outside the pleadings are considered.  See Meister v. Tex. Adjutant General's Dep't, 233 F.3d 332, 335 (5th Cir 2000); Federal Rule of Civil Procedure 12(b). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

#### 2. Successor in interest

The defendants contend that the plaintiffs and Mosaic fail to state a claim against Forge USA.  They argue that Forge USA did not exist when Gulf Forge allegedly sold the part to YUBA.  Forge USA contends that it is a separate entity from Gulf Forge and that it has no connection to the defective part. The plaintiffs and third-party plaintiff argue that there are

disputed issue of material fact concerning whether Forge USA is the successor in interest to Gulf Forge.

Texas law does not generally recognize successor liability. Under Texas law, a buyer of assets is liable for the predecessor's conduct only if the buyer expressly assumes the liability. Tex. Bus. Corp. Act art. 5.10B(2) (Ver; see Mudgett v. Paxson Mach. Co., 709 S.W.2d 755, 758 (Tex. App. 1986).

Forge USA presents evidence that Gulf Forge ceased to operate in 1994 when LaSalle National Bank seized its assets. Gulf Forge maintained its existence "on paper" on advice of counsel. LaSalle National Bank sold Gulf Forge's business assets, but not its liabilities, to Alberta Forge, Inc. (Alberta), the owner of the real property where the assets were located. The indebtedness to LaSalle National Bank was satisfied by the sale of the assets, and the trade creditors received a portion of the amount owed.

Gulf Forge's controlling shareholder, Jerry Brougher, had no interest in Alberta, and Dale Culham, the Canadian owner of Alberta, had no connection with Jerry Brougher. In January 2001, Alberta sold its assets to Brougher, Inc. d/b/a Forge USA.[1] Forge USA resumed operations at the same location with some of the same employees and equipment. Forge USA engages in a business different from Gulf Forge's operations and has different customers. The alleged defective inlet tube sheet was made by Gulf Forge years before Forge USA was formed.

The evidence establishes that Alberta assumed only the assets of Gulf Forge, and Forge

---

[1] Jerry's son, Wade Brougher, owns 51% of Forge USA, and Jerry Brougher owns 49%.

USA purchased only the assets of Alberta, except for trade payables for which invoices had been received. The plaintiffs and third-party plaintiff have not put forth evidence that the seizure of Gulf Forge by LaSalle and the purchase of Alberta from LaSalle was fraudulent or otherwise intended as an escape from liability.

Accordingly, there are no disputed issues of material fact, and the plaintiffs and the third-party plaintiff have not alleged facts to support a claim against Forge USA. The claims against Forge USA are dismissed.

**B.** *In personam* **jurisdiction**

    **1. Legal standard**

"The plaintiff bears the burden of establishing [personal] jurisdiction but is required to present only *prima facie* evidence." Seiferth v. Helicopteros Attuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006). All relevant factual disputes are resolved in favor of the plaintiff. Id. Personal jurisdiction over a non-resident defendant is determined by the state's long-arm statute and the Due Process Clause. ICEE Distrib., Inc. v. J&J Snack Foods, 325 F.3d 586, 591 (5th Cir. 2003). Because Louisiana's long-arm statute extends to the limits of the Due Process Clause of the Fourteenth Amendment, the inquiry is whether subjecting Gulf Forge to personal jurisdiction in Louisiana would offend due process. See Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 335 (5th Cir. 1999). Due process is not offended if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 66 S.Ct. 154, 158 (1945) (internal quotation and citation omitted).

Personal jurisdiction may be either specific jurisdiction or general jurisdiction. Defendants can be subject to general *in personam* jurisdiction if they have "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S.Ct. 1868, 1872 n.9 (1984). The continuous corporate operations within a state must be substantial and of such a nature as to justify suit. International Shoe, 66 S.Ct. at 159. The "test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001).

When an action arises out of or is related to the defendant's contacts with the forum, jurisdiction is commonly referred to as "specific jurisdiction." See Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S.Ct. at 1872 n.8.

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the] "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum . . . and the litigation results from alleged injuries that "arise out of or relate to" those activities.

Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2182 (1985) (citations and footnotes omitted). "A single act by the defendant directed at the forum state . . . can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc, 9 F.3d 415, 419 (5th Cir. 1993) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S.Ct. at 1872 n.8).

The court applies a three-step analysis to determine specific jurisdiction:

(1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the

>plaintiff's cause of action arises out of or result from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Seiferth, 472 F.3d at 271.  "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable.

In conducting the fairness inquiry, the court examines "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." Luv N' Care Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 473 (5th Cir. 2006).

"Where a nonresident's contact with the forum state stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has [specific] jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state." Nuovo Pignone, SPA v. Storman Asia M/V, 310 F.3d 374, 380 (5th Cir. 2002) (internal quotation and citation omitted).  "The foreseeability required in the products liability context is 'not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Seifert, 472 F.3d at 273 (quoting World-Wide Volkswagen Corp. v. Woodson, 100 S.Ct. 559 (1980)).  "Once a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take a product to a distant state,

without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor." Id. "The stream-of-commerce principle is applied to companies that . . . 'purposefully serve markets broader than the states in which [their] initial or direct sales are made.'" Nuovo Pignone, SPA v. Storman Asia M/V, 310 F.3d 374, 381 (5th Cir. 2002) (quoting Petroleum Helicopters, Inc., 804 F.2d 1367, 1370 (5th Cir. 1987) (*en banc*)).

### 2. Gulf Forge[2]

Gulf Forge argues that the plaintiffs have not established personal jurisdiction by presenting *prima facie* evidence that it knew that its products were intended for use in Louisiana or that any product was actually sold to YUBA and sent to Louisiana. Gulf Forge contends that the information identifying the destination of the inlet tube sheet as St. James, Louisiana, was added by hand after the inlet tube sheet was manufactured.

The plaintiffs and the third-party plaintiff contend that Gulf Forge is subject to specific jurisdiction because Gulf Forge manufactured the product and sold it into the stream of commerce with a reasonable expectation that it would end up in Louisiana.

The sale of the inlet tube sheet by Gulf Forge to YUBA took place in Texas. Jerry Brougher states in his affidavit that the inlet tube was sold as a part for a mechanical device and that Gulf Forge did not know where the complete mechanical device would be sold or used.

Brougher testified in his deposition that forging is a small industry and that there were no competitors in Louisiana in the late 1980's and early 1990's. Title to the products was taken at

---

[2] The court does not address personal jurisdiction over Forge USA because the claims are dismissed.

the Gulf Forge location, and most customers arranged for their own transport or picked up the forged item at the plant.  In the case of YUBA, Brougher knew that it was in the business of selling heat exchangers, but he did not know who the customers were.  Brougher stated that YUBA would not have provided that proprietary information regarding its customers because the industry was very competitive.  However, he indicated that, on several occasions, the name of the customer was available, and Gulf Forge had a policy in place to protect the confidential information.

      Ernie L. Blanchard, the inspection supervisor for Mosaic's Louisiana region, states in an affidavit that Gulf Forge was aware that the inlet tube sheet forging supplied to YUBA was destined for the Faustina plant in St. James Parish, Louisiana.  Attached to Blanchard's affidavit are two exhibits related to YUBA's drawing DWG  89-E-811-3SK1 for the inlet tube sheet: the certified test report of chemical analysis, mechanical properties, and heat treatment that Gulf Forge sent to YUBA, and YUBA's actual drawing identifying the destination of the inlet tube sheet forging as "Agrico Chem. Co. Faustina Plant St. James, La."  Brougher responds that the documents are not reliable evidence because the certified test report and the drawing do not carry the same revision number.

      Evaluating all the evidence presented, the court concludes that, because the forging industry had a limited number of manufacturers of parts for heavy industry, Gulf Forge manufactured and sold the inlet tube sheet with the expectation that it could be used in a number of states, and in particular neighboring Louisiana, which did not have a comparable forging industry.  Therefore, Gulf Forge purposely served states broader than Texas, where the direct

sales were made. Moreover, even if the exhibits attached to Blanchard's affidavit carry different revision numbers, they are evidence that YUBA prepared a drawing for Gulf Forge to manufacture the inlet tube sheet to be used in the heat exchanger and that Gulf Forge knew that YUBA did business with the Faustina plant in Louisiana.

Although Gulf Forge did not contract with a citizen of Louisiana, there is *prima facie* evidence that it contracted with YUBA who brought the heat exchanger to Louisiana. Accordingly, as a voluntary member of the economic chain that brought the inlet tube sheet to Louisiana, the plaintiffs and third-party plaintiff have established that Gulf Forge had minimum contacts with Louisiana because it purposely availed itself of the privilege of conducting business in Louisiana. See Nuovo Pignone, SPA, 310 F.3d at 380.

At the second step of the specific jurisdiction analysis, the court inquires whether the cause of action arises under the minimum contacts with the State of Louisiana. The cause of action arises out of the forum-related contacts because the allegations in the complaint are that the weld seam of the inlet tube sheet at the Faustina plant separated.

At the third step, the burden now shifts to Gulf Forge to show that the assertion of jurisdiction is unfair and unreasonable. Gulf Forge has not met its burden by putting forth evidence that the exercise of personal jurisdiction is unfair and unreasonable.

The court must also inquire whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." Gulf Forged purposely availed itself of the privileges of placing products in the stream of commerce that would be used in Louisiana. Where a product placed in the stream of commerce allegedly caused injury in Louisiana, the

plaintiffs and the State have a legitimate interest in litigating the matter of public safety in Louisiana.

Accordingly, subjecting Gulf Forge to personal jurisdiction in Louisiana does not offend due process, and the motion to dismiss because of lack of *in personam* jurisdiction is denied.

### III. CONCLUSION

The plaintiffs and the third-party plaintiff have failed to state a claim against Forge USA, and the claims are dismissed. The plaintiffs and third-part plaintiff have established *in personam* jurisdiction as to Gulf Forge, and the motion to dismiss the claims against Gulf Forge are denied.

New Orleans, Louisiana, this  22nd  day of May, 2008.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**