UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FLORENCE HARVEY, ET AL | CIVIL ACTION |
| VERSUS | NO: 06-9510<br>C/W 06-9512 AND C/W<br>07-1465 |
| MOSAIC FERTILIZER, LLC, ET AL | SECTION: "S" (1) |

## ORDER AND REASONS

The Motion for Summary Judgment (Doc. # 120) by Yuba Heat Transfer, LLC is **DENIED**.

## BACKGROUND

Plaintiffs, Florence Harvey and others, filed a "Class Action Petition for Damages," to recover damages arising from an October 11, 2006, explosion and release of hazardous substances from a facility owned by Mosaic Fertilizer, LLC. The explosion occurred when hydrogen gas leaked and ignited. A heat exchanger identified as the "123-C Exchanger" separated at the inlet tube sheet and the "123-C Exchanger" cap during normal operation. The separation caused a fire which burned the gases in the process equipment, resulting in an explosion.

YUBA Heat Transfer, LLC manufactured the "123-C Exchanger," which was purchased by Mosaic's predecessor, Agrico Chemical Company. In 1989, Agrico contracted with YUBA for the

design of the heat exchanger, and in 1990, YUBA installed the heat exchanger which was in continuous use until the explosion. Mosaic filed a third party demand against YUBA, and the plaintiffs subsequently amended their complaints to include YUBA as a defendant. YUBA now moves for summary judgment, seeking dismissal of Mosaic's third party claim and plaintiffs' claims against it as perempted under Louisiana Revised Statute §§9:5607(A)(2) and (3) and 9:2772(A)(1)(b), and alternatively, because the claims seek relief beyond contractual limits of liability in the agreement between Mosaic's predecessor, Agrico, and YUBA.

## ANALYSIS

### 1. Legal Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[1] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[2]

### 2. Peremption

The Supreme Court of Louisiana instructs:

> Peremptive statutes are strictly construed against peremption and in favor of the claim. Of the possible constructions, the one which maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted.

---

[1] *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[2] *Celeotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

2

*Rando v. Anco Insulations, Inc.*, No. 2008-C-1163 c/w No. 2008-C-1169, 2009 WL 1426272, at *21 (La. May 22, 2009)(citations omitted).

    a. <u>Louisiana Revised Statute §9:5607(A)(2) and (3)</u>

La. Rev. Stat. §9:5607(A)(2) and (3)(emphasis added) states:

> A. No action for damages against any professional engineer, surveyor, engineer intern, surveyor intern, or licensee **as defined in R.S. 37:682**, or any professional architect, landscape architect, architect intern, or agent as defined in R.S. 37:141, or professional interior designer, or licensee as defined in R.S. 37:3171, or other similar licensee licensed under the laws of this state, or real estate developer relative to development plans which have been certified by a professional engineer or professional architect, whether based upon tort, or breach of contract, or otherwise arising out of an engagement to provide any manner of movable or immovable planning, construction, design, or building, which may include but is not limited to consultation, planning, designs, drawings, specifications, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought unless filed in a court of competent jurisdiction and proper venue at the latest within five years from:
>
> . . .
>
> 2) The date the owner has occupied or taken possession of the improvement, in whole or in part, if no such acceptance is recorded; or
>
> 3) The date the person furnishing such services has completed the services with regard to actions against that person, if the person performing or furnishing the services, as described herein, does not render the services preparatory to construction, or if the person furnishes such services preparatory to construction but the person furnishing such services does not perform any inspection of the work.

La. Rev. Stat. §37:682(4) defines "professional engineer" as:

> [A]n individual who, by reason of his special knowledge and ability to apply the mathematical, physical, and engineering sciences and the principles and methods of engineering analysis and design, acquired by an engineering education and engineering experience, is qualified to practice engineering, as evidenced by his licensure as such by the board.

The term "licensure" is defined in §37:682(1) as:

> [T]he recognition granted by the board and its issuance of a license to any person to practice engineering or land surveying in the state of Louisiana.

The term "board" is defined in §37:682(2) as:

> [T]he Louisiana Professional Engineering and Land Surveying Board, provided for by this Chapter.

Further, La. Rev. Stat. §37:681 provides:

> In order to safeguard life, health, and property and to promote the public welfare, any individual in either public or private capacity, or foreign or domestic firm, practicing or offering to practice professional engineering ... shall be required to submit evidence that he is qualified to so practice and shall be licensed as hereinafter provided. It shall be unlawful for any person to practice or to offer to practice in this state engineering or land surveying, as defined in this Chapter, or to use in connection with his name or otherwise assume, use, or advertise any title or description tending to convey the impression that he is a professional engineer or a professional land surveyor, unless such person has been duly licensed under the provisions of this Chapter.

YUBA contends that the claims against it are perempted by La. Rev. Stat. §9:5607(A)(2) and (3), because YUBA is a licensed engineering firm. The affidavit from Jacob Williams, a contract administrator for YUBA, states that YUBA is an engineering firm that is licensed and located in

Oklahoma.

The peremptive statute La. Rev. Stat. §9:5607 does not apply to all engineers, but rather only to "professional engineers" "as defined in R.S. 37:682" which, in turn, defines "professional engineers" as those having the engineering expertise "as evidenced by his licensure" from the Louisiana Professional Engineering and Land Surveying Board. While YUBA has provided evidence of having an engineering license in Oklahoma, there is no evidence that establishes that YUBA holds a Louisiana engineering license. Hence, YUBA has not established, as a matter of law, that it is an "engineer" entitled to the protections of the peremption §9:5607(A)(2) and (3).

b. <u>Louisiana Revised Statute §9:2772(A)(1)(b):</u>

La. Rev. Stat. §9:2772(A)(1)(b) provides:

> No action, whether ex contractu, ex delicto, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought against any person performing or furnishing land surveying services, as such term is defined in R.S. 37:682, including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9) ...:

La. Rev. Stat. §9:2772 is inapplicable to a contract of sale. *KSLA-TV, Inc. v. Radio Corp. of America*, 693 F.2d 544, 545 (5th Cir. 1982). "[I]n determining whether a contract is a construction contract or a contract of sale, Louisiana courts generally weigh the economics of the situation to

determine whether the primary obligation is 'to give' (sales contract) or 'to do' (construction contract)." *Harris v. Black Clawson Co.*, 961 F.2d 547, 553 (5th Cir. 1992)(citations and quotations omitted). The court may consider whether "the value [to the obligor] of the obligation to install the equipment is minimal compared to the value of the equipment itself." *Harris*, 961 F.2d at 553 *(citing KSLA-TV, Inc. v. Radio Corp. of America*, 501 F.Supp. 891, 894 (W.D. La. 1980), *aff'd in part and remanded in part*, 693 F.2d 544 (5th Cir. 1982)).

Among the factors to consider in determining whether a contract is one of construction or of sale is the amount of on-site construction time in relation to the fabrication time of the equipment or item at issue. For example, in *Tenneco Oil Co.*, 495 So. 2d 1317, 1322 (La. App. 4th Cir. 1986), the court held that §9:2772 applied to a contract involving a gasoline tank because the time that the builder of the tank spent with on-site construction was three times the amount time spent on fabrication of the tank components; because the construction costs were over one-half the price exclusive of materials; and because the construction and installation costs exceeded other contract costs. *See also Poree v Elite Elevator Services, Inc.*, 665 So.2d 133, 135 (La. App. 4th Cir.), *writ denied*, 667 So.2d 1053 (La. 1996). In *KSLA-TV*, the Fifth Circuit held that a contract for the purchase, design, fabrication and installation of a television tower was not a "contract of sale," but rather a "construction contract" subject to 9:2772; and adopted the district court's reasoning that the contract was one of construction. *KSLA-TV*, 693 F.2d at 545-46. The district court found that under the contract, "the obligations to design, fabricate and erect the tower [were] the primary obligations." *KSLA-TV*, 501 F.Supp. at 894.

Courts have also inquired as to whether "the article sold is sufficiently complex or is of such

6

character that it usually requires the seller to install it." *Holden v. Placid Oil*, 512 F.Supp. 644, 646 n.1 (E.D. La. 1981). Whether the item purchased is subject to a sales tax is another consideration. *Tenneco Oil Co.*, 495 So.2d at 1322.

YUBA contends that §9:2772 is applicable to the claims against it because it had a contract with Agrico to construct the heat exchanger. YUBA contends that it "employed its engineering expertise and skill to design a massive, one-off piece of industrial equipment which remained in operation, in one location, from the time of its installation, for nearly 20 years." Yuba also contends that it provided engineering services, consultation, planning, design, drawing, specifying, investigation, evaluation, measuring, and administration relative to the construction and work that it performed. Williams' affidavit states that in 1989, YUBA "engineered design drawings, based on applicable specifications, for the Heat Exchanger."

However, Mosaic has provided YUBA corporate deposition excerpts which establish that the heat exchanger was made at the Agrico facility in Tulsa, and that YUBA did not install, nor participate in the installation of, the heat exchange at the Agrico facility. Further, the YUBA corporate representative testified at his deposition that on July 25, 1990, YUBA shipped the heat exchanger to Agrico, and charged Agrico sales taxes and shipment charges. The YUBA representative also acknowledged that the heat exchanger made by YUBA for Agrico was a duplicate of a heat exchanger that had been made by another manufacturer, who was responsible for the engineering work, drawings and procedures. Mosaic also provided an affidavit from Ernest Blanchard, a Mosaic employee who additionally worked for Agrico, who stated that Agrico contracted with a third party, United Crafts, Inc., to install the heat exchanger.

7

YUBA relies on *KSLA-TV*, where defendants, RCA and Stainless, Inc., were sued for negligence for the collapse of a television transmission tower that RCA and Stainless built. RCA had entered into a contract to design, fabricate and install the tower. RCA then contracted with Stainless to design and fabricate the tower on site. RCA and Stainless moved for summary judgment, arguing that the contract to design, fabricate and install the tower was one of construction and thus subject to peremption under §9:2772. Ultimately, summary judgment was granted for RCA and Stainless, holding that the contract was a contract of construction and dismissing plaintiffs' claims due to peremption under §9:2772. *See KSLA-TV*, 501 F. Supp. at 896.

Unlike RCA and Stainless, who were responsible for the erection and installation of the tower on site, YUBA had no installation obligations under the contract with Agrico. The heat exchanger was built in Oklahoma and then transported to Louisiana, where it was installed by a company hired by Agrico. Further, Agrico was charged sales tax, and the heat exchanger that YUBA built was a duplicate of one made by another manufacturer who was responsible for the engineering of the design. These facts militate against a finding that the contract between Agrico and YUBA was one of construction, and thus subject to §9:2772. Rather, the contract between Agrico and YUBA is a contract of sale to which §9:2772 is inapplicable.

YUBA has failed to establish, as a matter of law, that its contract with Agrico was a contract of construction. Accordingly, YUBA is not entitled to summary judgment that the claims against YUBA are perempted under §9:2772.

### 3. Contractual Limits of Liability

"A party may, under some circumstances, legally contract for a limitation on recoverable

damages, but such an agreement must clearly indicate the intention of the parties. For a waiver of recoverable damages to be effective, as with the waiver of warranties, it must be 1) written in clear and unambiguous terms; 2) contained in the contract; and 3) brought to the attention of the parties against whom it is to be enforced." *Gulf American Industries v. Airco Indus. Gases*, 573 So.2d 481, 489 (La. App. 5th Cir. 1990)(citations omitted).

YUBA contends that the contract between it and Agrico relieves YUBA of all liability. YUBA attaches correspondence dated July 28, 1989, from YUBA to Agrico which contains YUBA's proposal to Agrico. The proposal letter refers to the "Terms of Sale" and states:

> Our "Terms of Sale," except as may be modified herein, are attached and made a part of this proposal. In no event shall either party be liable to the other for consequential, special, or incidental damages arising in any way of the performance of this contract.

YUBA also attaches its standard "terms of sale" which state that YUBA expressly limits the warranty of parts, equipment and materials not manufactured by YUBA, and that "in no event shall YUBA be liable for incidental or consequential damages or commercial losses nor for any other loss or damage except as above set forth." YUBA contends that because Mosaic, in its third party demand against YUBA, contends that the failure of the heat exchanger was caused by a component part that YUBA did not manufacture, YUBA has no liability for the failure of the component part.

Mosaic argues that YUBA does not have a valid waiver because the documents upon which YUBA relies are not contained in the contract between YUBA and Agrico. Mosaic argues that the July 28, 1989, letter is YUBA's proposal to Agrico, and the August 14, 1989, letter from YUBA to Agrico states that with regard to "Item 123C," "the order for that item has not been placed to date,"

and that this item required "further clarification, technically and commercially." Further, the August 14, 1989, letter informed that YUBA needed "an order or letter of intent by the close of business on August 18, 1989." Mosaic points to an August 23, 1989, letter from Agrico to YUBA advising YUBA to go forward with the engineering, but that YUBA was not to purchase any materials unless authorized by Agrico. Mosaic also attaches the Mosaic's purchase order for the heat exchanger which states in capital letters:

> NOTICE: ... THIS ORDER EXPRESSLY LIMITS ACCEPTANCE TO TERMS STATED HEREIN, AND ANY ADDITION OR DIFFERENT TERMS PROPOSED BY THE SELLER ARE REJECTED UNLESS EXPRESSLY AGREED TO IN WRITING.

YUBA contends its proposal was the contract between the parties. Mosaic contends that Agrico's purchase order limits acceptance to the terms stated in the purchase order. The purchase order allows terms proposed by the seller but only if agreed to in writing. YUBA has not come forward with a document which bears Agrico's consent to YUBA's proposed terms and conditions. Because there are questions of material fact as to terms and conditions of the contract between YUBA and Agrico, YUBA is not entitled to summary judgment that it is contractually relieved of all liability.

## CONCLUSION

YUBA has not established as a matter of law that it is a "professional engineer" subject to peremption under La. Rev. Stat. §9:5607(A)(2) and (3). YUBA has not established as a matter that the contract between it and Agrico is one of construction, and thus subject to peremption under La. Rev. Stat. 9:2772(a)(1)(b). Further, questions of material fact exist as to terms and conditions of the

contract between YUBA and Agrico and preclude summary judgment that YUBA is contractually relieved of all liability. The motion for summary judgment is denied.

New Orleans, Louisiana, this 25 day of September, 2009.

                    MARY ANN VIAL LEMMON
                    UNITED STATES DISTRICT JUDGE